IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARYLAND DEPARTMENT OF STATE POLICE,<br><br>Defendant. | Civil Action No.: |

## COMPLAINT

Plaintiff, the United States of America ("United States"), alleges as follows:

1. The United States brings this action to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"), with respect to race and sex discrimination.

2. As set forth more fully below, the United States alleges that the Maryland Department of State Police ("MDSP") has used and continues to use a written test called the Police Officer Selection Test ("POST") and a physical fitness test called the Functional Fitness Assessment Test ("FFAT") and to screen and select applicants for employment in entry-level state police trooper positions ("troopers"). MDSP's use of the POST has disproportionately excluded African-American applicants, and its use of the FFAT has disproportionately excluded female applicants, from employment as troopers. MDSP's uses of the POST and the FFAT are not job related or consistent with business necessity. Through its uses of the POST and the FFAT, MDSP is engaged in a pattern or practice of employment discrimination against African-American and female applicants for troopers in violation of Title VII.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-6(b) and 28 U.S.C. §§ 1331, 1343(a)(3) & 1345.

4. Venue is proper in the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1391, because Defendant MDSP is located within this judicial district, and a substantial part of the events giving rise to this action took place in this judicial district.

## PARTIES

5. Plaintiff United States is expressly authorized to bring this action under Section 707(a) of Title VII, 42 U.S.C. § 2000e-6(a).

6. Defendant MDSP is a principal department of state government created pursuant to the laws of the State of Maryland, headquartered at 1201 Reisterstown Road, Pikesville, Maryland 21208.

7. MDSP is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8. MDSP is a law enforcement agency that employs troopers who are responsible for issuing traffic citations and warnings; investigating traffic accidents; investigating and completing criminal investigations; interviewing witnesses, victims, and suspects; writing field reports; arresting and processing suspects; preparing cases for court and testifying in court; and providing basic medical attention to ill and injured persons; and enforcing the laws of the State of Maryland, among other tasks.

9. Subject to the Maryland Public Safety Article, MDSP is responsible for establishing the terms, conditions, and other practices for the selection and employment of troopers.

## STATEMENT OF FACTS

A. **MDSP's HIRING PROCESS FOR TROOPER POSITIONS**

10. Since at least 2017, MDSP has used the same multi-step process for hiring troopers. The selection process includes the following steps: (1) initial online employment application; (2) applicant orientation; (3) physical fitness test; (4) written examination; (5) comprehensive online application; (6) oral interview; (7) polygraph examination; (8) background investigation; (9) medical and psychological examinations; and (10) Police Selection Committee file review.

B. **THE WRITTEN EXAMINATION FOR MDSP TROOPER POSITIONS**

11. Since at least 2017, MDSP has used a written examination called the Police Officer Selection Test ("POST") in screening applicants for trooper positions.

12. The POST includes four separate components, which purport to test: mathematics (20 questions); reading comprehension (25 questions); grammar (20 questions); and report writing skills (10 questions).

13. To pass the POST, a trooper applicant must achieve an aggregate score of 70% on all components combined, and also must score at least 70% on the reading comprehension component, 70% on the grammar component, and 70% on the report writing skills component. There is no minimum passing score on the mathematics component, but the score on the mathematics component is factored into the aggregate score.

14. Only those applicants who pass the POST are eligible to continue in MDSP's selection process for trooper positions. MDSP treats applicants who do not achieve the passing scores described in Paragraph 13 as having failed and thus ineligible to continue in the selection process.

15. Once a trooper applicant passes the POST, MDSP will accept that score indefinitely. If an applicant previously achieved these passing scores on the POST during the application process for another law enforcement agency, MDSP will accept those results.

16. Any applicant may take the POST up to four times within a 12-month period. Applicants who fail the POST four times within a 12-month period are disqualified from the application process for 12 months from the date of the final failure.

17. Since 2017, MDSP made trooper appointments to twelve academy classes: classes 147 through class 158.

18. Of the trooper applicants who were considered for the twelve academy classes that have been hired since 2017:

    a. approximately 91% of white applicants passed the POST at least once;

    b. approximately 71% of African-American applicants passed the POST at least once; and

    c. the rate at which African-American applicants passed the POST at least once is statistically significantly lower than the rate at which white applicants passed the POST at least once; and

    d. the African-American applicant pass rate is less than 80% of the white applicant pass rate.

19. MDSP's use of the POST in the manner described in Paragraphs 11 through 18, *supra*, has had an adverse impact on African-American applicants for the trooper position.

20. MDSP's use of the POST in the manner described in Paragraphs 11 through 18, *supra*, is not job related or consistent with business necessity.

C. **THE PHYSICAL FITNESS TEST FOR MDSP TROOPER POSITIONS**

21. Since at least 2017, MDSP has used a physical fitness test called the Functional Fitness Assessment Test ("FFAT") in screening applicants for trooper positions.

22. The FFAT is comprised of four events that is required to be conducted in the following order: (i) push-ups; (ii) sit-ups; (iii) flexibility reach; and (iv) 1.5-mile run.

23. MDSP has set a separate passing standard for each event of the FFAT that applicants must meet to remain eligible for selection into the academy as a trooper.

24. To pass the FFAT, the applicant must complete: (i) 18 push-ups in one minute; (ii) 27 sit-ups in one minute; (iii) reach approximately 1.5 inches beyond the applicant's toes while seated; and (iv) run 1.5 miles within 15 minutes and 20 seconds. If an applicant fails any event, the assessment is over, and the applicant is not permitted to continue the FFAT.

25. Only those applicants who achieve the passing standard for each event of the FFAT are eligible to continue in MDSP's selection process for the trooper position. MDSP treats applicants who did not achieve the passing standard on each event of the FFAT as having failed and thus ineligible to continue in the selection process.

26. Trooper applicants may take the FFAT up to three times in a given year.

27. Of the applicants considered for the twelve academy classes that have been hired since 2017:

    a. approximately 81% of male applicants passed the FFAT at least once;

    b. approximately 51% of female applicants passed the FFAT at least once;

    c. the rate at which female applicants passed the FFAT at least once is statistically significantly lower than the rate at which male applicants passed the FFAT at least once; and

  d. the female applicant pass rate is less than 80% of the male applicant pass rate.

28. MDSP's use of the FFAT in the manner described in Paragraphs 20 through 27, *supra*, has had an adverse impact on female applicants for trooper positions.

29. MDSP's use of the FFAT in the manner described in Paragraphs 20 through 27, *supra*, is not job related or consistent with business necessity.

**D.** **<u>ADDITIONAL FACTS</u>**

30. MDSP has used and continues to use policies and practices that discriminate against African-American and female applicants, and that deprive or tend to deprive African-American and female applicants of employment opportunities because of their race, color, or sex, in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6. MDSP has implemented these policies and practices, among other ways, by:

  a. using the POST as a pass/fail screening device for its selection of entry-level troopers which (i) results in a disparate impact on African-American candidates, (ii) is not job related for the position in question or consistent with business necessity, and (iii) does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

  b. using the FFAT as a pass/fail screening device for its selection of entry-level troopers which (i) results in a disparate impact on female candidates, (ii) is not job related for the position in question or consistent with business necessity, and (iii) does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

  c. failing or refusing to take appropriate action to correct the present effects of its discriminatory policies and practices; and

  d.  failing or refusing to "make whole" those African-American and female applicants for trooper positions who have been harmed by MDSP's unlawful uses of the POST and the FFAT.

31. In accordance with Section 707 of Title VII, 42 U.S.C. § 2000e-6, the United States, through the Department of Justice, has investigated MDSP's policies and practices in selecting troopers as they affect African-American and female applicants. The United States has notified MDSP of that investigation and of its determination that the policies and practices described in Paragraphs 11 through 30, *supra*, are unlawful.

32. The United States has reasonable cause to believe that the policies and practices of MDSP described in Paragraphs 11 through 30, *supra*, constitute a pattern or practice of resistance to the full enjoyment by African-American and female applicants of the right to equal employment opportunities without discrimination based upon race, color, and/or sex, in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6.

33. All conditions precedent to the filing of suit have been performed or have occurred.

## THE UNITED STATES' PATTERN OR PRACTICE CLAIMS PURSUANT TO SECTION 707 OF TITLE VII, 42 U.S.C. § 2000e-6

### COUNT 1

### MDSP'S USE OF THE POST IN SELECTING TROOPER CANDIDATES HAS AN UNLAWFUL DISPARATE IMPACT ON AFRICAN-AMERICAN TROOPER APPLICANTS

34. Plaintiff United States realleges Paragraphs 1 through 20 and 30 through 33, *supra*, as if fully set forth herein.

35. MDSP's use of the POST for the selection of trooper candidates since 2017, and any continuing use thereof, has resulted in a disparate impact on African-American applicants for

entry-level trooper candidate positions, is not job related for the position in question or consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

## COUNT 2

### MDSP'S USE OF THE FFAT IN SELECTING TROOPER CANDIDATES HAS AN UNLAWFUL DISPARATE IMPACT ON FEMALE TROOPER APPLICANTS

36.  Plaintiff United States realleges Paragraphs 1 through 10 and 21 through 33, *supra*, as if fully set forth herein.

37.  MDSP's use of the FFAT for the selection of trooper candidates from since 2017, and any continuing use thereof, has resulted in a disparate impact on female applicants for entry-level trooper candidate positions, is not job related for the position in question or consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court order MDSP, its officers, agents, employees, successors and all persons in active concert or participation with them, to refrain from engaging in discriminatory employment practices against African-American and female applicants based on race, color, and sex, and specifically to:

    a.  refrain from using a written examination as a pass/fail screening device for its selection of entry-level troopers which (i) results in a disparate impact on African-American candidates, (ii) is not job related for the position in question or consistent with business necessity, and (iii) does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

      b.    refrain from using a physical fitness test as a pass/fail screening device for its selection of entry-level troopers which (i) results in a disparate impact on female candidates, (ii) is not job related for the position in question or consistent with business necessity, and (iii) does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

      c.    "make whole" those African-American and female applicants for trooper candidate positions who have been harmed by MDSP's unlawful use of the POST and/or the FFAT; and

      d.    take all appropriate actions to correct the present effects of its discriminatory policies and practices.

Plaintiff United States prays for such additional relief as justice may require, together with its costs and disbursements in this action.

Date: October 2, 2024

Respectfully submitted,

| | |
|---|---|
| KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division | EREK L. BARRON<br>United States Attorney<br>District of Maryland |
| KAREN D. WOODARD<br>Chief<br>Employment Litigation Section | SARAH A. MARQUARDT<br>Co-Chief, Civil Rights & Special Victims Section<br>District of Maryland |
| HECTOR F. RUIZ, JR.<br>Deputy Chief<br>Employment Litigation Section | |
| */s/ Emily Given*<br>EMILY GIVEN<br>NY Bar No. 5420211<br>CHEYENNE N. CHAMBERS | */s/ Kimberly S. Phillips*<br>KIMBERLY S. PHILLIPS<br>MD Bar No. 811611<br>Assistant United States Attorney |

NC Bar No. 48699  
Senior Trial Attorneys  
Civil Rights Division  
United States Department of Justice  
950 Pennsylvania Avenue, NW  
Washington, DC 20530  
(202) 532-5696  
(202) 532-3850  
Emily.Given@usdoj.gov  
Cheyenne.Chambers@usdoj.gov  

District of Maryland  
6500 Cherrywood Lane, Suite 200  
Greenbelt, MD 20770  
(410) 209-4800  
Kimberly.Phillips@usdoj.gov  

*Attorneys for Plaintiff United States of America*