## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

           Plaintiff,

    v.

MARYLAND DEPARTMENT OF STATE POLICE,

           Defendant.

Civil Action No.: 24-cv-2862

## CONSENT DECREE

## TABLE OF CONTENTS

I.      BACKGROUND AND STIPULATIONS ...................................................................... 1

    A.      Trooper Selection Process....................................................................................... 2

    B.      The Written Test ...................................................................................................... 2

    C.      The Physical Fitness Test........................................................................................ 3

    D.      Other ........................................................................................................................ 4

II.     DEFINITIONS ................................................................................................................ 5

III.    PURPOSES OF THE CONSENT DECREE .................................................................... 6

IV.     FAIRNESS HEARING ON THE TERMS OF THE CONSENT DECREE...................... 6

    A.      Provisional Entry of this Decree ............................................................................. 6

    B.      Claims Administrator ............................................................................................... 7

    C.      Notice of Settlement to Applicants ......................................................................... 8

    D.      Notice of Settlement to Other Interested Persons & Organizations ..................... 10

    E.      Objections to Entry of the Consent Decree........................................................... 11

    F.      Final Entry of the Consent Decree ........................................................................ 13

V.      GENERAL INJUNCTIVE RELIEF .............................................................................. 13

    A.      Injunctions............................................................................................................. 13

    B.      Consent Decree Compliance Officer ..................................................................... 14

    C.      Interim Selection Process ...................................................................................... 15

    D.      Development and Use of The Lawful New Selection Devices............................... 15

        1.      Work Plan ................................................................................................... 17

        2.      Proposal to Use the New Selection Devices .............................................. 18

        3.      Reporting on Administration of the New Selection Devices....................... 20

VI.     INDIVIDUAL RELIEF ................................................................................................. 22

    A.      Two Forms of Individual Relief ............................................................................ 22

    B.      Institution and Deposits into a Settlement Fund ................................................... 22

    C.      Notice of Entry of Consent Decree to Applicants ................................................. 22

    D.      Submission of Interest-in-Relief Forms by Potentially Eligible Applicants ........ 23

    E.      Determination of Claimants' Eligibility for Individual Relief .............................. 24

    F.      Monetary Relief ..................................................................................................... 25

    G.      Priority Hiring Relief ............................................................................................. 26

    H.      Proposed Individual Relief Awards List................................................................ 26

VII.    FAIRNESS HEARING ON INDIVIDUAL RELIEF ................................................ 27

    A.    Filing of Proposed Individual Relief Awards Lists with the Court ..................... 27

    B.    Fairness Hearing on Individual Relief ................................................................ 27

    C.    Notice of Preliminary Eligibility Determinations to Claimants ......................... 27

    D.    Objecting to Individual Relief Determinations ................................................... 28

    E.    Filing Objections to Individual Relief ................................................................ 28

    F.    Amendment to Preliminary Individual Relief Awards List ................................ 29

    G.    Approval of Final Individual Relief Awards List ............................................... 29

VIII.    EXECUTION OF INDIVIDUAL RELIEF ........................................................... 30

    A.    Notice of Individual Relief Awards and Acceptance and Release ...................... 30

    B.    Acceptance of Individual Relief ......................................................................... 30

    C.    Issuance of Monetary Award Checks by the Claims Administrator .................... 33

    D.    Priority Hiring Relief .......................................................................................... 36

        1.    Selection Process for Non-Incumbent Claimants Eligible for Priority Hiring Relief ......................................................................... 38

        2.    Incumbent Claimants Eligible for Priority Hiring Relief ........................... 39

        3.    Offer of Priority Hire ................................................................................. 40

        4.    Retroactive Seniority to Claimants Hired .................................................. 42

        5.    Hiring Bonus for Claimants Hired ............................................................. 43

        6.    MDSP's Reports to the United States on Claimants Hired ......................... 45

    E.    Confidentiality of Individual Relief .................................................................... 45

IX.    RECORD KEEPING AND COMPLIANCE MONITORING ....................................... 46

X.    DISPUTE RESOLUTION .............................................................................. 47

XI.    DURATION OF THE CONSENT DECREE ...................................................... 48

XII.    COSTS AND FEES ..................................................................................... 48

XIII.    MISCELLANEOUS ..................................................................................... 48

## APPENDICES

APPENDIX A          Notice of Settlement and Fairness Hearing

APPENDIX B          Objection to the Entry of Consent Decree Form

APPENDIX C          Notice of Entry of Consent Decree

APPENDIX D          Interest-in-Relief Form

APPENDIX E          Notice of Individual Relief Determination and Fairness Hearing on Individual Relief

APPENDIX F          Objection to Preliminary Determination on Individual Relief Form

APPENDIX G          Notice of Individual Relief Award

APPENDIX H          Acceptance of Individual Relief Award and Release of Claims Form

## I.    BACKGROUND AND STIPULATIONS

This action was brought by Plaintiff, United States of America ("United States"), against Defendant, Maryland Department of State Police ("MDSP"), to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq*. ("Title VII").  This Court has jurisdiction of this action under 42 U.S.C. § 2000e-6(b) and 28 U.S.C. §§ 1331, 1343(a)(3), and 1345.

The United States alleges in its Complaint that since at least 2017, the MDSP has engaged in a pattern or practice of unintentional discrimination against African-American and female applicants for its entry-level Trooper position by making hiring decisions which caused a disparate impact in violation of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).  The Complaint alleges that the MDSP's use of a written test has an adverse impact on African-American applicants for the entry-level Trooper job, who were disproportionately disqualified from the hiring process based on the written test.  The Complaint also alleges that the MDSP's use of a physical fitness test has an adverse impact on female applicants for the entry-level Trooper job, who were disproportionately disqualified from the hiring process based on the physical fitness test.  The United States alleges that the physical fitness test and written test have not been shown to be job related for the MDSP's entry-level Trooper position and consistent with business necessity.

The United States and the MDSP, desiring that this action be settled by an appropriate Consent Decree ("Decree") and without the burden of protracted litigation, agree to the jurisdiction of this Court over the Parties and the subject matter of this action.  The United States and the MDSP further agree to this Decree as final and binding between themselves as to the issues raised in the United States' Complaint in this action.  Subject to the Court's approval of

1

this Decree, the Parties waive findings of fact and conclusions of law on all issues, except as to the following, to which the Parties stipulate for the purposes of this Decree, and which the Court finds:

### A.    Trooper Selection Process

i.    The MDSP is a law enforcement agency that employs Troopers who are responsible for, among other things, issuing traffic citations and warnings; investigating traffic accidents; investigating and completing criminal investigations; interviewing witnesses, victims, and suspects; writing field reports; arresting and processing suspects; preparing cases for court and testifying in court; providing basic medical attention to ill and injured persons; and enforcing the laws of the State of Maryland.

ii.    Subject to the Maryland Public Safety Article and Personnel and Pensions Article, the MDSP is responsible for the recruitment and hiring of its entry-level Troopers.

iii.    At all relevant times, the MDSP used a multi-step selection process to hire entry-level Troopers.

iv.    The MDSP's selection process for entry-level Troopers included a written test called the Police Officer Selection Test ("POST") and a physical fitness test called the Functional Fitness Assessment Test ("FFAT").

### B.    The Written Test

v.    Since 2007, the MDSP has administered the POST to all applicants for the MDSP's entry-level Trooper position.

vi.    The POST purports to measure candidates' abilities in math, reading, grammar, and writing.

vii.   To advance further in the MDSP's selection process, applicants for the MDSP's entry-level Trooper position were required to pass the POST by obtaining a score of at least 70% on the reading comprehension component, 70% on the grammar component, 70% on the incident report writing component, and a 70% overall average among the four components. (There is no minimum passing score on the math component.) Applicants who failed the POST were removed from further consideration but were permitted to retake the POST at a later date.

viii.  Since at least 2017, African-American applicants have passed the POST at a lower rate than white applicants. The difference between the pass rates of African-American and white applicants is statistically significant at 11.4 units of standard deviation.

ix.    The United States contends that the MDSP's use of the POST was not job related and/or consistent with business necessity.

x.     Based upon information available to it at the time of filing its Complaint, the United States estimates that at least 19 additional African-American applicants would have been hired by the MDSP as entry-level Troopers since 2017, absent the disparate impact of the POST.

### C.     The Physical Fitness Test

xi.    Since 1999, the MDSP has administered the FFAT to all applicants for the MDSP's entry-level Trooper position.

xii.   The FFAT consists of push-ups, sit-ups, a seated reach, a trigger pull, and a one-and-a-half mile run.

xiii.  To advance further in the MDSP's selection process, applicants for the MDSP's entry-level Trooper position were also required to pass the FFAT by completing 18 push-ups in

one minute, 27 sit-ups in one minute, reaching about one-and-a-half inches beyond one's toes (while seated), pulling a trigger 10 times with each hand, and completing a one-and-a-half mile run within 15 minutes and 20 seconds. Applicants who failed the FFAT were removed from further consideration but were permitted to retake the FFAT at a later date.

xiv.   Since at least 2017, female applicants have passed the FFAT at a lower rate than male applicants. The difference between the pass rates of female and male applicants is statistically significant at 11.2 units of standard deviation.

xv.   The United States contends that the MDSP's use of the FFAT was not job related and/or consistent with business necessity.

xvi.   Based upon information available to it at the time of filing its Complaint, the United States estimates that at least 29 additional female applicants would have been hired by the MDSP as entry-level Troopers since 2017, absent the disparate impact of the FFAT.

**D.   Other**

xvii.   Although the Parties stipulate to the foregoing for purposes of this Decree, the MDSP does not admit to liability under Title VII. Should the Court not approve the Decree, the Parties agree that the stipulations herein may not be used in subsequent proceedings to establish the MDSP's liability under Title VII.

xviii.   The relief provided by this Decree does not exceed make-whole relief to individuals who would otherwise have been hired as entry-level Troopers but for the disparate impact of the practices challenged by the United States.

xix.   The procedures set forth in this Decree for identifying Claimants and allocating relief among them are fair, adequate, and reasonable, and are not illegal, a product of collusion, or against the public interest.

In resolution of this action, by Decree of the Parties, **IT IS THEREFORE ORDERED AND ADJUDGED** as follows:

## II.    DEFINITIONS

1.    The "Parties" to this Decree are the United States of America, by the Department of Justice ("United States"), and the Maryland Department of State Police ("MDSP").

2.    "Days" means calendar days unless business days are clearly specified.  If any deadline referenced in this Decree should fall on a weekend or federal holiday, the deadline shall be moved to the next business day.

3.    "Date of Entry" means the date on which the Court enters the Decree as a final order, at or after the Fairness Hearing on the Terms of the Consent Decree as set forth in Paragraph 34 of this Decree.

4.    The "Challenged Written Test" means the written test that was used by the MDSP as described in Stipulations v-x.

5.    The "Challenged Physical Fitness Test" means the physical fitness test that was used by the MDSP as described in Stipulations xi-xvi.

6.    "Claimant" refers to any person who submits an Interest-in-Relief Form.

7.    "Individual Relief" means Monetary Relief and/or Priority Hiring Relief as defined in this Section.

8.    "Monetary Relief" means a monetary award that represents the value of some of the wages that a Claimant would have received from the MDSP if he or she had not been disqualified from the selection process by the Challenged Written Test or the Challenged Physical Fitness Test and had been hired into the entry-level Trooper position for which he or she applied.

9.      "Priority Hiring Relief" means the opportunity for a Claimant to participate in the priority hiring selection process and be hired as a MDSP Trooper with Retroactive Seniority and a Hiring Bonus in Lieu of Pension Credits, or to be credited with Retroactive Seniority and a Proportional Hiring Bonus, as described herein.  Eligibility to participate in the priority hiring selection process does not guarantee a Claimant will receive an offer of priority hire from the MDSP.

10.      "New Selection Device" means any test, requirement, or other criterion used by the MDSP in place of the Challenged Written Test or the Challenged Physical Fitness Test to evaluate an applicant's qualifications for hire as an entry-level Trooper.

## III.    PURPOSES OF THE CONSENT DECREE

11.      The purposes of this Decree are to ensure that:

   a.   The MDSP replaces the Challenged Written Test and the Challenged Physical Fitness Test with New Selection Devices that promote its public safety need to hire qualified Troopers and that comply with Title VII; and

   b.   The MDSP provides Individual Relief to eligible African-American and female applicants who were excluded from further consideration for employment as entry-level Troopers with the MDSP due to its uses of the Challenged Written Test and the Challenged Physical Fitness Test.

## IV.    FAIRNESS HEARING ON THE TERMS OF THE CONSENT DECREE

### A.      Provisional Entry of this Decree

12.      This Decree is subject to approval by the Maryland Board of Public Works.  If the Board of Public Works does not approve this Decree, it shall not be binding on MDSP or the United States.  If the Board of Public Works approves this Decree, no later than three (3)

6

days after the Maryland Board of Public Works gives final approval to this Decree, the

Parties shall file a Joint Motion for the Provisional Approval and Entry of the Decree by

the Court and request a Fairness Hearing on the Terms of this Consent Decree to allow

the Court to determine whether the terms of the Decree are fair, adequate, reasonable,

lawful, and not a product of collusion or against the public interest.  The Parties will

request that the Court provide notice at least one hundred and twenty (120) days before

the date and time set for a Fairness Hearing on the Terms of the Consent Decree.

13. The purpose of the Fairness Hearing on the Terms of the Consent Decree and the related

notification provisions of this Decree is to provide all persons who may be affected by

the terms of the Decree with notice and an opportunity to present objections prior to final

entry of the Decree, in accordance with Section 703(n) of Title VII, 42 U.S.C. § 2000e-

2(n).

### B.    Claims Administrator

14. The Parties shall retain an independent Claims Administrator to assist with the notice and

claims process.

15. No later than fifteen (15) days after the Parties file the Joint Motion for the Provisional

Approval and Entry of the Decree, as described in Paragraph 12, the United States shall

enter a contract retaining the Claims Administrator.  The United States shall bear all costs

and expenses of the Claims Administrator incurred for work performed before the date of

the Fairness Hearing on the Terms of the Consent Decree.

16. No later than the date set for the Fairness Hearing on the Terms of the Consent Decree,

MDSP shall enter a contract retaining the same independent Claims Administrator

retained by the United States.  The MDSP shall bear all costs and expenses of the Claims

Administrator incurred for work performed on and/or after the date of the Fairness

Hearing on the Terms of the Consent Decree, which shall be in addition to, and not

deducted from, any and all other monetary commitments the MDSP has under this

Decree.

17. The Claims Administrator's contract with each Party shall require the Claims

Administrator to perform the work outlined in this Decree and to work under the control

and supervision of the contracting Party. The Claims Administrator's contracts shall also

require it to respond promptly to all inquiries from and provide all requested information

to both Parties.

18. If the United States or the MDSP has reason to believe that the Claims Administrator is

not adequately performing the work outlined in this Decree, the United States and the

MDSP will meet and confer to find a mutually agreeable course of action to effectuate

the adequate performance of the work outlined in this Decree.

**C.     Notice of Settlement to Applicants**

19. No later than one hundred (100) days prior to the Fairness Hearing on the Terms of the

Consent Decree, the MDSP shall provide to the Claims Administrator and the United

States the last-known mailing address and all known email addresses of each applicant

who:

    a.   identified as Black, as African American, as two or more races, or did not provide

         their race when applying for any of the MDSP's selection processes for the entry-

         level Trooper position, and were disqualified by the Challenged Written Test

         between 2017 and the date on which the Parties file the Joint Motion described in

         Paragraph 12; or

b.  identified as a woman, as female, or did not provide their sex when applying for any of the MDSP's selection processes for the entry-level Trooper position, and were disqualified by the Challenged Physical Fitness Test between 2017 and the date on which the Parties file the Joint Motion described in Paragraph 12.

20.   The Claims Administrator shall conduct reasonable additional research to determine if there is a more current address for each applicant described in Paragraph 19.

21.   The Claims Administrator will assign an identification (ID) number to each of the applicants described in Paragraph 19.

22.   No later than eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree, the Claims Administrator shall provide to the applicants identified in Paragraph 19 above a copy of a Notice of Settlement and Fairness Hearing in a format substantially similar to APPENDIX A, via email to all known email addresses and via first-class U.S. mail to the last-known mailing address.

23.   The Claims Administrator shall keep records of all Notices that are returned to the Claims Administrator as undeliverable.  If any applicant's Notice is returned to the Claims Administrator as undeliverable (whether via e-mail or first-class U.S. mail), the Claims Administrator shall promptly notify the Parties and attempt to identify an updated electronic and/or postal mailing address as soon as practicable.  If the Claims Administrator or one of the Parties identifies an alternate electronic and/or postal mailing address, the Claims Administrator shall re-send the Notice to the applicant within two (2) business days of receipt of the alternate address.

**D.** **Notice of Settlement to Other Interested Persons & Organizations**

24. No later than eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree, the MDSP shall provide a copy of the Notice described in Paragraph 22 to each Trooper currently employed by the MDSP, via MDSP's direct message system for employees (known as the Power DMS).

25. The MDSP shall publish a Notice of the Settlement and the Fairness Hearing, in a format substantially similar to that contained in APPENDIX A, on the MDSP's website (https://mdsp.maryland.gov/Pages/default.aspx), in the Baltimore Sun, in the Capital Gazette, in the Baltimore Banner, on WTOP's local Maryland website (https://wtop.com/local/maryland), and via all social media accounts (*i.e.*, Facebook and/or X (formerly Twitter)) that are regularly used by the MDSP.

26. The notice published on the MDSP's website shall include a publicly-accessible link from which the Notice of Settlement and Fairness Hearing and the Decree can be accessed.  This publicly-accessible link and notice shall be published and remain on the website for no less than eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree.

27. The notice published in the Baltimore Sun, the Capital Gazette, the Baltimore Banner, and on WTOP's local Maryland website (https://wtop.com/local/maryland) shall be published eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree and again sixty (60) days prior to the Fairness Hearing on the Terms of the Consent Decree and shall provide the website address from which the Notice of Settlement and Fairness Hearing and the Decree can be accessed and the telephone number of the Claims Administrator.

28.     The notice published via social media shall be published eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree and again sixty (60) days prior to the Fairness Hearing on the Terms of the Consent Decree as follows:

    a.  The MDSP shall post on its Facebook page (https://www.facebook.com/MarylandStatePolice/) the following text and a publicly-accessible link from which the Notice of Settlement and Fairness Hearing and the Decree can be accessed: "The MDSP has voluntarily entered into a Consent Decree with the U.S. Department of Justice to resolve allegations that the MDSP's use of a particular written test and physical fitness test in its hiring process caused unintentional discrimination against African-American and female applicants.  To learn more, visit: [link]."  The MDSP shall not delete these posts prior to the Fairness Hearing on the Terms of the Consent Decree.

    b.  The MDSP shall post a tweet on its X (formerly Twitter) page (@MDSP) with the following text and a publicly-accessible link from which the Notice of Settlement and Fairness Hearing and the Decree can be accessed: "MDSP voluntarily entered a Consent Decree with the Dept. of Justice @CivilRights and @USAO_MD to resolve claims MDSP's use of particular written, fitness tests in hiring process caused unintentional discrimination against African-American and female applicants.  Read more: [link]."  The MDSP shall not delete these tweets prior to the Fairness Hearing on the Terms of the Consent Decree.

**E.     Objections to Entry of the Consent Decree**

29.     A person who wishes to object to the terms of the Consent Decree may do so by submitting to the Claims Administrator an Objection to the Entry of the Consent Decree

in a format substantially similar to APPENDIX B by no later than fifty (50) days before the Fairness Hearing on the Terms of the Consent Decree, or later with good cause for the delay as determined by the United States.

30.    The submission date of each Objection to the Entry of the Consent Decree Form shall be the date on which the form was submitted electronically, emailed to the Claims Administrator as determined by the email date stamp, or mailed to the Claims Administrator as determined by the postmark.

31.    The Claims Administrator will assign an ID number to any individual who submits an Objection and who has not already been assigned an ID number pursuant to Paragraph 21.

32.    No later than forty-five (45) days prior to the date set for the Fairness Hearing on the Terms of the Consent Decree, and on a rolling weekly basis thereafter (if necessary), the Claims Administrator shall serve upon the Parties the content of all objections it has received, with each ID indicated.

33.    No later than ten (10) days prior to the Fairness Hearing on the Terms of the Consent Decree:

    a.    The United States shall file with the Court the content of all objections received by the Claims Administrator, with all personally identifying information ("PII") redacted, including addresses, telephone numbers, and email addresses, as well as any other information later identified for redaction by the Parties; and

    b.    The Parties shall file their responses, if any, to objections timely received by the Claims Administrator.  The Parties' responses will identify individuals by ID number only and will not include any PII.

F.    **Final Entry of the Consent Decree**

34.    The Court shall approve and enter the Decree at or after the Fairness Hearing on the

Terms of the Consent Decree if the Court determines that the terms of this Decree are

fair, adequate, reasonable, lawful, and not a product of collusion or against the public

interest.

V.    **GENERAL INJUNCTIVE RELIEF**

A.    **Injunctions**

35.    During the term of this Decree, except as provided for in Paragraphs 45-46, the MDSP,

its officials, agents, employees, and successors, and all persons acting on behalf of or in

active concert or participation with it, are enjoined from using any written test as part of

its selection process for entry-level Troopers in any manner that results in statistically

significant disparate impact upon African-American applicants and is not shown to be job

related and consistent with business necessity under Title VII, or from refusing to adopt

an alternative employment practice that exists within the meaning of 42 U.S.C. § 2000e-

2(k)(1)(A)(ii).

36.    During the term of this Decree, except as provided for in Paragraphs 45-46, the MDSP,

its officials, agents, employees, and successors, and all persons acting on behalf of or in

active concert or participation with it, are enjoined from using any physical fitness test as

part of its selection process for entry-level Troopers in any manner that results in

statistically significant disparate impact upon female applicants and is not shown to be

job related and consistent with business necessity under Title VII, or from refusing to

adopt an alternative employment practice that exists within the meaning of 43 U.S.C. §

2000e-2(k)(1)(A)(ii).

37.    Except as provided for in Paragraphs 45-46, the MDSP, its officials, agents, employees, and successors, and all persons acting on behalf of or in active concert or participation with it, are specifically enjoined from using the Challenged Written Test.

38.    Except as provided for in Paragraphs 45-46, the MDSP, its officials, agents, employees, and successors, and all persons acting on behalf of or in active concert or participation with it, are specifically enjoined from using the Challenged Physical Fitness Test.

39.    During the term of this Decree, the MDSP shall not administer any written test for use in selecting entry-level Troopers without the consent of the United States or, if the Parties cannot reach agreement, approval by the Court pursuant to Paragraph 145.

40.    During the term of this Decree, the MDSP shall not administer any physical fitness test for use in selecting entry-level Troopers without the consent of the United States or, if the Parties cannot reach agreement, approval by the Court pursuant to Paragraph 145.

41.    The MDSP is enjoined from retaliating against any person because they opposed the alleged discrimination at issue in this case, in any way participated in or cooperated with the United States' investigation or litigation of the alleged discrimination at issue in this case, have been involved with the development or administration of this Decree, seek or receive relief under any provision of this Decree, or object to the Decree or an award of Individual Relief provided pursuant to the Decree.

**B.    Consent Decree Compliance Officer**

42.    No later than thirty (30) days after the date this Decree is provisionally entered by the Court, the MDSP shall designate a Consent Decree Compliance Officer, who may be a MDSP employee.

14

43.     The Compliance Officer shall report quarterly on the status of the implementation of this Decree to the Maryland Attorney General Office's unit representing the MDSP and to the United States, through the Legal Counsel Section of the MDSP, during the period that this Decree is in effect.

44.     The Compliance Officer shall include in these quarterly reports any complaints of discrimination on the basis of race or sex arising from the MDSP's screening of applicants for entry-level Trooper positions, or retaliation prohibited by Paragraph 41 above.

**C.    Interim Selection Process**

45.     The Parties recognize that the proper development of lawful New Selection Devices will take time, and that MDSP's immediate operational needs require the hiring of Troopers before the development and implementation of New Selection Devices as described in Paragraphs 47-58 is complete.

46.     In order to address MDSP's immediate operational needs while mitigating the potential adverse impact that would result from continued use of the Challenged Tests, the Parties agree that MDSP may continue to use the Challenged Tests on an interim basis for the purpose of hiring two (2) classes of entry-level Troopers to begin the MDSP Academy after the Date of Entry of this Decree.

**D.    Development and Use of The Lawful New Selection Devices**

47.     The MDSP will adopt and use lawful New Selection Devices in place of the Challenged Written Test and Challenged Physical Fitness Test to hire entry-level Troopers.  The New Selection Devices shall either have no statistically significant adverse impact on the bases of race or sex or shall have been demonstrated to be job related for the Trooper position

and consistent with business necessity in accordance with Title VII.  In selecting or

developing the New Selection Devices, the MDSP shall make reasonable efforts to

explore the availability of selection devices that have been shown to reduce or eliminate

adverse impact upon African Americans and women in processes for selecting Troopers.

a.  The MDSP will retain one or more third parties to develop the lawful New

Selection Devices for hiring entry-level Troopers in place of the Challenged

Written Test and the Challenged Physical Fitness Test ("Test Developer(s)").

b.  The MDSP shall bear all costs and expenses of the Test Developer(s), which shall

be in addition to, and not deducted from, any and all other monetary commitments

the MDSP has under the Decree.

c.  Within ninety (90) days of the Parties tendering the Consent Decree to the Court

for provisional approval and entry, the MDSP shall provide the United States with

notice of the Test Developer(s) it seeks to hire.  Within fourteen (14) days of

receiving notice, the United States will provide the MDSP with notice of its assent

or objection to use of the Test Developer(s) for purposes of the Decree.

d.  The MDSP may not use a Test Developer to which the United States has objected

and may not select a Test Developer based on price alone.  Should the MDSP and

the United States have a dispute about the selection of a Test Developer, either

party may submit the dispute to the Court in accordance with the dispute

resolution provisions set forth in Paragraph 145 of this Decree.

e.  The lawful New Selection Devices must be developed, validated, and used in

accordance with Title VII, the Uniform Guidelines on Employee Selection

Procedures ("UGESP"), 29 C.F.R. Part 1607, the Principles for the Validation and

16

Use of Personnel Selection Procedures of the Society for Industrial and
Organizational Psychologists ("SIOP Principles"), and the terms of this Decree.

f.  The MDSP must make the Test Developer(s) that it retains in accordance with
this Paragraph available for consultation with the United States, its contractors,
and experts throughout the design, development, and validation process within ten
(10) days of a request by the United States unless another time period is agreed
upon by the Parties.

### 1.    Work Plan

48.    The MDSP will require the Test Developer(s) to prepare a work plan for the development
of each lawful New Selection Device that details each stage of the design, development,
and validation of the test and that contains estimated timelines for each stage.  The work
plan will also include a timeline for producing information to the United States, through
the MDSP, at particular milestones of the design, development, and validation process
(*e.g.* the production of a job analysis) so that the United States can ensure compliance
with Paragraph 47.e.  The MDSP must submit these work plans to the United States no
later than one hundred and thirty-five (135) days after the Parties tender the Consent
Decree to the Court for provisional approval unless the Parties mutually agree in writing
to modify this time.

49.    The United States shall review the work plans provided and, no later than thirty (30) days
after receipt of each work plan, notify the MDSP in writing of any requested
modifications or objections to the work plan.  If the United States does not notify the
MDSP within said time, it waives its right to object to the work plan, unless the Parties

17

mutually agree in writing to modify the time or there is good cause for the United States'
delay.

50.  If the United States objects pursuant to Paragraph 49 to the Test Developer's work plan,
the Parties and the Test Developer shall within twenty (20) days, unless another period of
time is mutually agreed upon in writing, meet and confer to discuss the United States'
objection and whether resolution is possible.

51.  The United States will review the information produced by the Test Developer pursuant
to the work plan agreed upon by the Parties and notify the MDSP of any objections
during the development process.  If the United States objects to any aspect of the design,
development, or validation process pursuant to this Paragraph, the Parties and the Test
Developer shall within twenty (20) days meet and confer to discuss the United States'
objection and whether resolution is possible.

**2.  Proposal to Use the New Selection Devices**

52.  Forty-five (45) or more days before the MDSP administers any New Selection Devices,
the MDSP shall submit to the United States a proposal to use the New Selection Devices
for hiring entry-level Troopers in place of the Challenged Written Test and/or the
Challenged Physical Fitness Test.  This proposal shall include all information available to
the MDSP about the development and/or validation of the proposed New Selection
Device, except that the MDSP need not reproduce information already made available to
the United States through implementation of the work plan as outlined in Paragraph 48.
This information includes but is not limited to:

    a.   a description of the New Selection Device and the manner in which the MDSP intends to use it (including but not limited to the proposed scoring methods, time limits, and requirements to pass any component of the test);

    b.   the known, or likely, adverse impact upon African Americans and women of the intended use of the New Selection Device, if any, including the known or likely adverse impact upon African Americans and/or women resulting from the scoring methods proposed to be used by the MDSP;

    c.   all evidence of job relatedness or validity of the New Selection Device, including all job analyses, test plans, expert reports, and validation studies, as well as data underlying such analyses, plans, reports, or studies; and

    d.   identification of any alternative selection device(s) that the MDSP considered but did not adopt, and/or any other manner of using the New Selection Device that the MDSP considered but did not adopt, if applicable.

53.   No later than thirty (30) days after receiving the proposal and information described in Paragraph 52, above, the United States shall notify the MDSP in writing whether it objects to the MDSP's proposed use of the New Selection Device; otherwise, the MDSP may administer the New Selection Device.  If the United States objects to MDSP's proposal for use of the New Selection Devices, the Parties and the Test Developer shall within twenty (20) days, unless another period of time is mutually agreed upon in writing, meet and confer to discuss the United States' objection and whether resolution is possible.

### 3.    Reporting on Administration of the New Selection Devices

54.    No later than thirty (30) days following the first administration of each of the MDSP's

New Selection Devices (and before hiring based on any such selection devices) and on a

quarterly basis thereafter for two years, the MDSP shall provide to the United States a list

of all applicants who took the MDSP's New Selection Devices, including:

      a.    each applicant's race and sex;

      b.    whether they are eligible for Priority Hiring Relief;

      c.    their performance on each item of each of the MDSP's New Selection Devices;

      d.    their raw scores on the MDSP's New Selection Devices;

      e.    their final scores on the MDSP's New Selection Devices; and

      f.    any pass/fail outcome on the New Selection Devices.

55.    In addition to the list of information in Paragraph 54, the MDSP agrees to provide to the

United States, upon request, any additional reasonably accessible, non-privileged

available information relevant to the evaluation of its new hiring process for Title VII

compliance.

56.    If the United States determines that the MDSP's use of the New Selection Devices does

not comply with Title VII and/or this Decree, the United States shall, within thirty (30)

days of receiving the information identified in Paragraph 54 from the MDSP, notify the

MDSP in writing that the United States objects to the MDSP's continued use of the New

Selection Devices and state the basis for any such objection.

57.    If the United States objects pursuant to Paragraph 56 to the MDSP's use of the New

Selection Devices:

a.  The Parties shall, within twenty (20) days of the United States' stating its objection(s), meet and confer to discuss the United States' objection(s) and whether resolution is possible.

b.  No person shall be hired as an entry-level Trooper based on the New Selection Devices except by written agreement of the Parties or order of the Court.  The Parties agree that, in the event an objection is submitted to the Court, they each have a duty to work expeditiously toward an interim agreement that would enable the MDSP to address immediate hiring exigencies while the objection is resolved.

58.  For the duration of this Decree, if the MDSP proposes to replace or change its use of the New Selection Devices:

a.  The MDSP shall provide written notice to the United States at least forty-five (45) days prior to the intended effective date of the replacement or change, including all information and documentation related to the design, development, and validation of the proposed replacement or change, including, but not limited to, the proposed scoring method and whether such change or modification will have more or less adverse impact on African Americans or women than the previous New Selection Devices.

b.  The United States shall inform the MDSP whether it objects to the proposed replacement or change no later than twenty (20) days after receipt of the written notice set forth in Paragraph 58.a (above).

## VI.    INDIVIDUAL RELIEF

### A.    Two Forms of Individual Relief

59.    The MDSP will provide Individual Relief to eligible Claimants in the form of Monetary

Relief and/or Priority Hiring Relief, including Retroactive Seniority and Hiring Bonuses

in Lieu of Pension Credits, as described further below.

### B.    Institution and Deposits into a Settlement Fund

60.    No later than thirty (30) days after the Date of Entry of this Decree, the MDSP shall

deposit the sum of two million, seven hundred and fifty thousand dollars ($2,750,000.00)

into an interest-bearing account in a federally insured financial institution.

61.    The MDSP's deposit of two million, seven hundred and fifty thousand dollars

($2,750,000.00) plus any interest accrued on those amounts shall constitute the

"Settlement Fund" that shall be used to make Monetary Awards to eligible Claimants

pursuant to this Decree.  Funds from the Settlement Fund shall not be used to satisfy any

of the MDSP's other obligations in this Decree.

### C.    Notice of Entry of Consent Decree to Applicants

62.    No later than thirty (30) days after the Date of Entry of this Decree, the Claims

Administrator shall send a copy of the Notice of Entry of Consent Decree in a format

substantially similar to APPENDIX C to each applicant described in Paragraph 19.  Such

notice shall be sent by email to all known email addresses, if available, and via first-class

U.S. mail to the last-known mailing address.

63.    If MDSP Academy Class 159 or later has begun before the Date of Entry of this Decree,

such that applicants beyond those described in Paragraph 19 may be eligible for

Individual Relief pursuant to Paragraphs 69 and 70 below, then

a.  By no later than ten (10) days after the Date of Entry of this Decree, MDSP shall provide to the Claims Administrator and the United States the last-known mailing address and all known email addresses of each such applicant, and

b.  By the same deadline established in Paragraph 62, the Claims Administrator shall send a copy of the Notice of Entry of Consent Decree in a format substantially similar to APPENDIX C to each such applicant by email to all known email addresses, if available, and via first-class U.S. mail to the last-known mailing address.

64.  The Claims Administrator shall keep records of, and, if possible, shall re-send, all Notices returned as undeliverable by the same procedures described in Paragraph 23.

**D.    Submission of Interest-in-Relief Forms by Potentially Eligible Applicants**

65.  Any applicant who wishes to be considered for an award of Individual Relief under this Decree must submit to the Claims Administrator an Interest-in-Relief Form in a format substantially similar to APPENDIX D by no later than seventy-five (75) days after the Date of Entry of this Decree.  Any applicant who fails to submit an Interest-in-Relief Form by the deadline shall be deemed to have waived any right to be considered for an award of Individual Relief under this Decree, except for good cause as determined by the United States.

66.  The submission date of each Interest-in-Relief Form shall be the date on which the form was submitted electronically, emailed to the Claims Administrator as determined by the email date stamp, or mailed to the Claims Administrator as determined by the postmark.

67.  No later than eighty-five (85) days after the Date of Entry of this Decree, the Claims Administrator shall provide to the Parties the content of all Interest-in-Relief Forms

received by the Claims Administrator, with the ID number indicated.  Interest-in-Relief Forms received by the Claims Administrator more than ten (10) days after the deadline for submission of claim forms will be provided to the Parties in the same format described above on a weekly rolling basis.

   **E.    Determination of Claimants' Eligibility for Individual Relief**

68.   The United States will determine whether a Claimant is eligible for Individual Relief under this Decree, subject to objections and the Court approval process outlined below.

69.   A Claimant is eligible for Monetary Relief under this Decree if:

   a.   the Claimant either

      i.   is Black or African American, and was disqualified by the Challenged Written Test during the hiring process for an MDSP Academy class that began between 2017 and the Date of Entry of this Decree, or

      ii.   is a woman or female, and was disqualified by the Challenged Physical Fitness Test during the hiring process for an MDSP Academy class that began between 2017 and the Date of Entry of this Decree; and

   b.   at the time the Claimant was disqualified by the challenged test, the Claimant met the minimum qualifications for employment that were then in place.

70.   A Claimant is eligible for Priority Hiring Relief under this Decree if:

   a.   the Claimant satisfies the criteria in Paragraph 69.a. above;

   b.   the Claimant satisfies the criteria in Paragraph 69.b. above; and

   c.   at the time the Claimant is seeking Priority Hiring Relief, the Claimant meets the minimum qualifications for employment that are then in place.

71.    For the purposes of eligibility for Individual Relief pursuant to Paragraphs 69 and 70, the

minimum qualifications for hire as an entry-level Trooper with the MDSP remain the

same as those in place since January 1, 2017 and are:

    a.    At least 20 years of age, but no older than 59 years of age;

    b.    A U.S. citizen, or a permanent legal resident who is an honorably discharged

       veteran of the U.S. armed forces and has applied for U.S. citizenship;

    c.    Have a high school diploma or GED;

    d.    Be eligible to obtain a Maryland driver's license;

    e.    Have no court orders against them relating to domestic violence;

    f.    Comply with the MDSP's tattoo policy;

    g.    Have no felony criminal convictions;

    h.    Have not used cannabis in the last twelve (12) months;

    i.    Have not illegally used any drugs other than marijuana in the last three (3) years;

       and

    j.    Be truthful in every stage of the application process.

**F.    Monetary Relief**

72.    The United States shall determine which Claimants are eligible for Monetary Relief

under Paragraph 69.  In order to be eligible for Monetary Relief, a Claimant need not

express an interest in, or be eligible for, Priority Hiring Relief, or accept an offer of

employment as an entry-level Trooper in the MDSP.

73.    The United States shall determine each eligible Claimant's Monetary Award from the

Settlement Fund, such that awards from the Settlement Fund are distributed among all

eligible Claimants who sought Monetary Relief, taking into account the date on which

each Claimant was first disqualified by a challenged test, and for any eligible incumbent Claimants who have since been hired as a MDSP Trooper, the date on which they were hired.

### G.    Priority Hiring Relief

74.    The United States shall determine each Claimant's eligibility for Priority Hiring Relief. Eligibility to participate in the priority hiring selection process does not ensure a Claimant will receive an offer of priority hire from the MDSP.

### H.    Proposed Individual Relief Awards List

75.    No later than one hundred and twenty (120) days after the Date of Entry of this Decree, the United States shall provide the MDSP with a Proposed Individual Relief Awards List that identifies by ID number:

  a.    all Claimants who timely returned an Interest-in-Relief Form (or who falls within a good cause exception);

  b.    the type of relief each Claimant sought;

  c.    what, if any, relief the United States finds the Claimant eligible for based on the Interest-in-Relief Forms received by the Claims Administrator and any additional information submitted by the Claimant;

  d.    if the United States finds the Claimant eligible for Monetary Relief, the amount of Monetary Relief that the United States has determined should be awarded to the Claimant; and

  e.    if the United States finds the Claimant ineligible for either type of relief sought, the reason for the United States' determination that the Claimant is not eligible for such relief.

26

76.   No later than one hundred and fifty (150) days after the Date of Entry of this Decree, the
      MDSP shall notify the United States in writing if it objects to any of the United States'
      determinations.  The Parties shall attempt to resolve any objections submitted by the
      MDSP to the United States' determinations.

## VII.   FAIRNESS HEARING ON INDIVIDUAL RELIEF

### A.   Filing of Proposed Individual Relief Awards Lists with the Court

77.   No later than one hundred and eighty (180) days after the Date of Entry of the Decree, the
      United States shall file with the Court and serve upon the MDSP the Proposed Individual
      Relief Awards List, incorporating adjustments agreed to by the Parties as described in
      Paragraph 76.

### B.   Fairness Hearing on Individual Relief

78.   Upon filing the Proposed Individual Relief Awards List, the United States shall
      simultaneously move the Court to hold a Fairness Hearing on Individual Relief to allow
      the Court to determine whether the Proposed Individual Relief Awards List should be
      approved or amended.  The Court will provide the Parties with at least one hundred and
      twenty (120) days' notice of the date and time set for the Fairness Hearing on Individual
      Relief.

### C.   Notice of Preliminary Eligibility Determinations to Claimants

79.   No later than ninety (90) days before the date set for the Fairness Hearing on Individual
      Relief, the Claims Administrator shall send to each Claimant who submitted an Interest-
      in-Relief Form a Notice of Individual Relief Determination and Fairness Hearing on
      Individual Relief in a format substantially similar to APPENDIX E, via email to all

known email addresses, if available, and via first-class U.S. mail to the last-known

mailing address.

80.   The Claims Administrator shall keep records of, and, if possible, shall re-send, all

Notices returned as undeliverable by the same procedures described in Paragraph 23.

**D.    Objecting to Individual Relief Determinations**

81.   A Claimant who wishes to object to the United States' determination regarding his or her

Individual Relief may do so by submitting an Objection to Preliminary Determination on

Individual Relief in a format substantially similar to APPENDIX F by no later than fifty

(50) days prior to the date set for the Fairness Hearing on Individual Relief, or later with

good cause for the delay as determined by the United States.

82.   The submission date of each Objection to Preliminary Determination on Individual Relief

Form shall be the date on which the form was submitted electronically, emailed to the

Claims Administrator as determined by the email date stamp, or mailed to the Claims

Administrator as determined by the postmark.

83.   No later than forty-five (45) days prior to the Fairness Hearing on Individual Relief, and

on a rolling weekly basis thereafter (if necessary), the Claims Administrator shall serve

upon the Parties the content of all objections it has received, with each ID indicated.

**E.    Filing Objections to Individual Relief**

84.   No later than ten (10) days prior to the Fairness Hearing on Individual Relief:

   a.   The United States shall file with the Court the content of all objections received

        by the Claims Administrator, with all PII redacted, including addresses, telephone

        numbers, and email addresses, as well as any other information later identified for

        redaction by the Parties; and

28

    b.   The Parties shall file their responses, if any, to objections timely received by the Claims Administrator.  The Parties' responses will identify Claimants by ID number only and will not include any PII of the Claimants.

85.    No later than the day of the Fairness Hearing on Individual Relief, the MDSP shall provide the Claims Administrator and the United States with any and all withholding tax forms that the MDSP will require Claimants to complete.

### F.    Amendment to Preliminary Individual Relief Awards List

86.    At or after the Fairness Hearing on Individual Relief, the Court shall determine which, if any, objections to the Proposed Individual Relief Awards List are well-founded.  The Court shall then approve the list as submitted or, if the Court finds that any objections are well-founded, shall request that the Parties make any necessary adjustments to the list consistent with such findings.

87.    The Court will find that an objection to the Proposed Individual Relief Awards List, including an objection to the amount of Monetary Relief to be awarded to a Claimant, is well-founded only if the Court finds that the determination is not fair, adequate, and reasonable, or is otherwise inconsistent with the provisions of this Decree or Title VII.

### G.    Approval of Final Individual Relief Awards List

88.    If the Court determines that the Individual Relief awards are fair, adequate, and reasonable, and otherwise consistent with the provisions of this Decree and Title VII, the Court shall approve the Individual Relief Awards List as final (the "Final Individual Relief Awards List") at or after the Fairness Hearing on Individual Relief.

VIII.    **EXECUTION OF INDIVIDUAL RELIEF**

A.      **Notice of Individual Relief Awards and Acceptance and Release**

89.    No later than twenty (20) days after the Court approves the Final Individual Relief

Awards List, either at or after the Fairness Hearing on Individual Relief, the Claims

Administrator shall provide notice to each Claimant determined by the Court to be

entitled to such relief.

90.    The Claims Administrator shall send to each Claimant determined by the Court to be

entitled to Individual Relief a Notice of Individual Relief Award in a format substantially

similar to APPENDIX G, via email to all known email addresses, if available, and via

first-class U.S. mail to the last-known mailing address.

91.    The Claims Administrator shall keep records of, and, if possible, shall re-send, all

Notices that are returned as undeliverable by the same procedures described in Paragraph

23.

B.      **Acceptance of Individual Relief**

92.    To receive an award of Individual Relief, a Claimant must submit to the Claims

Administrator an Acceptance of Individual Relief Award and Release of Claims in a

format substantially similar to APPENDIX H, along with any applicable withholding tax

forms, by no later than sixty-five (65) days after the Court approves the Final Individual

Relief Awards List, or later with good cause for the delay as determined by the United

States.

93.    The submission date of each Acceptance of Individual Relief Award and Release of

Claims Form shall be the date on which the form was submitted electronically, emailed to

the Claims Administrator as determined by the email date stamp, or mailed to the Claims

Administrator as determined by the postmark.

94.    Within no more than five (5) business days of the Claims Administrator's receipt of an

Acceptance of Individual Relief Award and Release of Claims Form and any applicable

withholding tax forms, the Claims Administrator shall review the form(s) to determine

whether it is fully executed with the information that is necessary to effectuate the

Claimant's Individual Relief award.

   a.  An Acceptance of Individual Relief Award and Release of Claims Form is fully

       executed if the Claimant completes all blanks that require a response as indicated

       on the form.  A withholding tax form is fully executed based on whether it can be

       processed consistent with IRS rules.

   b.  If the form is not fully executed, within no more than five (5) business days of the

       Claims Administrator's receipt of an Acceptance of Individual Relief Award and

       Release of Claims Form and any applicable withholding tax forms, the Claims

       Administrator shall notify the Claimant via email, mail, and by telephone, if a

       telephone number is available, that their form(s) was not fully executed, providing

       a clear explanation of how his or her form was deficient.  The Claims

       Administrator will include any new forms as necessary in the mail and email

       notifications.

95.    The Claims Administrator shall forward to the Parties the content of all Acceptance of

Individual Relief Award and Release of Claims Forms and withholding tax forms it

receives on a rolling weekly basis, with all timely forms to be forwarded to the Parties no

later than fifty-five (55) days after the Court approves the Final Individual Relief Award List.

96.    No later than eighty (80) days after the Court approves the Final Individual Relief Awards List, the Claims Administrator shall provide the Parties with a list of all Claimants who submitted Acceptance of Individual Relief Award and Release of Claims Forms and withholding tax forms, identifying which Claimants submitted fully executed forms, as described in Paragraph 94, and which Claimants submitted forms that were not fully executed.

97.    No later than ninety-five (95) days after the Court approves the Final Individual Relief Awards List, Claimants whose Acceptance of Individual Relief Award and Release of Claims Form and/or any applicable withholding tax forms were not fully executed must provide any missing information and must return fully executed forms.  A Claimant's failure to return fully-executed forms by this deadline, absent good cause as determined by the United States, shall constitute a rejection of the offer of Individual Relief and shall release the Parties from any further obligation under the Decree to make an award of Individual Relief to the Claimant.  No later than five (5) business days after this deadline, the Claims Administrator shall provide the Parties with all of the returned Acceptance of Individual Relief Award and Release of Claims Forms and any applicable withholding tax forms.

98.    No later than one hundred and five (105) days after the Court approves the Final Individual Relief Awards List, the Claims Administrator shall provide the Parties with an updated list of all of the Claimants who submitted Acceptance of Individual Relief Award and Release of Claims Forms and any applicable withholding tax forms,

identifying which Claimants submitted fully executed forms and which Claimants submitted forms that were not fully executed.

99.    If any Claimant listed on the Final Individual Relief Awards List rejects a Monetary Relief award, the United States shall reallocate that amount of Monetary Relief to other Claimants who timely returned all forms required by Paragraph 92, in a way which preserves the relative proportions of the Claimants' shares of the Settlement Fund as stated on the Final Individual Relief Awards List.  The United States will not reallocate funds to Claimants in a way which would result in any Claimant receiving more than make-whole relief.

100.   No later than one hundred and twenty (120) days after the Court approves the Final Individual Relief Awards List, the United States shall provide the MDSP and the Claims Administrator with an Amended Final Individual Relief Awards List.  The Amended Final Individual Relief Awards List will identify whether each Claimant timely returned all forms required by Paragraph 92 and the amount of Monetary Award to be paid to each Claimant after accounting for the United States' reallocation.  The Amended Final Individual Relief Awards List shall also identify each Claimant who is eligible for Priority Hiring Relief.

101.   No later than one hundred and thirty (130) days after the Court approves the Final Individual Relief Awards List, the United States shall file the Amended Final Individual Relief Awards List with the Court.

### C.    Issuance of Monetary Award Checks by the Claims Administrator

102.   No later than one hundred and fifty (150) days after approval of the Final Individual Relief Awards List, the Claims Administrator shall mail via first-class U.S. mail with

delivery tracking service a Monetary Award check to each Claimant listed on the Amended Final Individual Relief Awards List.  The amount of the Monetary Award check shall be the amount shown for the Claimant on the Amended Final Individual Relief Awards List, less all appropriate taxes and other amounts withheld in accordance with Paragraph 103.

103.    MDSP and the Claims Administrator shall coordinate to withhold from each Claimant's Monetary Award the Claimant's portions of all federal, state, and local taxes, and any other amounts that are required to be withheld by law, including appropriate employee contributions to Medicare and the Social Security fund.  MDSP shall be responsible, either directly or through the Claims Administrator, for remitting the monetary sums and reporting such Claimant-side deductions and withholdings to the appropriate taxing authorities.

104.    The MDSP shall be responsible, either directly or through the Claims Administrator, for remitting to the appropriate taxing authorities the MDSP's portion of all payroll taxes applicable for any Monetary Relief award paid to a Claimant, including the MDSP/employer contributions to Medicare and the Social Security fund.  The employer portion of such taxes shall not be deducted from any Claimant's Monetary Relief award, and such amounts shall not be payable from the Settlement Fund.

105.    The Claims Administrator shall keep records of, and, if possible, shall re-send, all Monetary Award checks returned as undeliverable by the same procedures described in Paragraph 23.

106.    No later than fifteen (15) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall provide to the Parties a statement indicating the

amount of the monetary payment made to each Claimant, the amounts withheld from each such Monetary Award check for taxes and other amounts required to be withheld by law, and the purpose of each such withholding.

107.    No later than thirty (30) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall provide to the Parties a list of all Claimants whose Monetary Award payments are still outstanding.  The list shall identify which Claimant's checks appear to have been delivered (no returned check) but have not been cashed and which Claimant's checks have been returned to the Claims Administrator as undeliverable.  The Claims Administrator shall also provide a statement of the amount of funds remaining in the Settlement Fund.

108.    No later than thirty (30) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall email and mail a letter to all Claimants whose Monetary Award payments are still outstanding to inform such Claimants that their awards may be redistributed or otherwise reallocated if they do not accept payment by a specified date one hundred and eighty (180) days after issuance of the check.

109.    No later than one hundred and forty (140) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall provide to the Parties an updated list of all Claimants whose Monetary Award payments are still outstanding.  The updated list shall identify which Claimant's checks appear to have been delivered (no returned check) but have not been cashed, and which Claimant's checks have been returned to the Claims Administrator as undeliverable.  The Claims Administrator shall also provide a statement of the amount of funds remaining in the Settlement Fund.

110.    No later than one hundred and fifty (150) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall email and mail a letter to all Claimants whose Monetary Award payments are still outstanding to provide such Claimants with final notice that their awards may be redistributed or otherwise reallocated if they do not accept payment by a specified date one hundred eighty (180) days after issuance of the check.  The letter shall state that no further warnings regarding such distribution will be given.

111.    No later than one hundred ninety (190) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall provide the Parties with a list of all Claimants whose Monetary Award checks were returned as undeliverable and/or uncashed, as well as a statement of the amount of funds remaining in the Settlement Fund.

112.    No later than two hundred (200) days after the Claims Administrator mails the Monetary Award checks, the United States shall inform the MDSP and the Claims Administrator either that: (1) the remaining funds should be reallocated among the other Claimants who are listed on the Amended Final Individual Relief Awards List in a manner designed to preserve the relative proportions of the Claimants' shares of the Settlement Fund, or (2) that reallocation is unnecessary because the United States determines that remaining funds are de minimis, and the Parties shall discuss the distribution of the remainder.

    **D.      Priority Hiring Relief**

113.    From the Claimants on the Amended Final Individual Relief Awards List who are deemed eligible for Priority Hiring Relief, the MDSP shall make up to, but no more than, twenty-five (25) Priority Hires, as described further below.

36

114.    To count as a Priority Hire under this Decree, a Claimant must be eligible for Priority

Hiring Relief as indicated by the Amended Final Individual Relief Awards List, and

either:

    a.    Be hired by the MDSP, by beginning their first day of paid employment in the

        MDSP Academy, after receiving an offer of priority hire as described in

        Paragraphs 118-119 and 127-129; or

    b.    Be an incumbent MDSP Trooper who is credited with Retroactive Seniority and a

        Proportional Hiring Bonus as described in Paragraphs 123-126.

115.    Nothing in this Decree shall preclude any Claimant from applying for hire or being hired

into the entry-level Trooper position under any of the MDSP's regular selection

processes.  The MDSP may not refuse to select or hire a Claimant under one of its regular

selection processes because the Claimant is eligible for Individual Relief under this

Decree.

116.    The MDSP's priority hiring obligation under this Decree is satisfied when either:

    a.    Twenty-five (25) eligible Claimants from the Amended Final Individual Relief

        Awards List have been hired or credited as Priority Hires pursuant to the terms of

        this Decree; or

    b.    All eligible Claimants from the Amended Final Individual Relief Awards List

        have:

           i.    Been hired or credited as Priority Hires pursuant to the terms of this

              Decree;

          ii.    Been disqualified from hire in a manner consistent with the terms of this

              Decree;

      iii.  Rejected an offer of priority hire (including by failing to timely accept an offer of priority hire, absent good cause as determined by the United States); or

      iv.  Accepted an offer of priority hire but failed to appear to begin the MDSP Academy on the date scheduled without good cause as determined by the United States.

117.    Subject to the terms and limitations in this Decree, all individuals selected to be Priority Hires will receive:

    a.  an award of Retroactive Seniority corresponding with the Claimant's retroactive seniority date, as described in Paragraphs 132-134; and

    b.  a hiring bonus in lieu of retroactive pension benefits, as described in Paragraphs 135-137.

### 1.    Selection Process for Non-Incumbent Claimants Eligible for Priority Hiring Relief

118.    To obtain an offer of priority hire, eligible non-incumbent Claimants must appear for and successfully complete the MDSP's Trooper screening and selection procedures that are then in effect and required of all other entry-level Trooper applicants.

119.    The MDSP must promptly invite eligible non-incumbent Claimants to begin the selection process by providing them with notice (via mail and email if provided) of administration dates for the New Selection Devices after the United States provides the MDSP and the Claims Administrator with an Amended Final Individual Relief Awards List.  The notice must:

    a.   identify the dates of all upcoming administrations of the New Selection Devices that will occur within six months of the date the notice is mailed,

    b.   be sent at least thirty (30) days prior to the earliest administration date of the New Selection Devices identified in the notice, and

    c.   be updated and re-sent if the MDSP adds any additional test administration dates that will occur within six months of the original notice.

120.    The MDSP shall make the same reasonable efforts as it makes with all other applicants to accommodate Claimants in scheduling the screening and selection procedures that are then in effect and required of all other Trooper applicants.

121.    If the MDSP disqualifies any Claimant listed on the Amended Final Individual Relief Award List based on any part of its screening and selection process before fulfilling its priority hiring obligations under the Decree, the MDSP shall, within ten (10) days of making such determination, send the United States written notice of its determination, the basis of its determination, and any supporting documentation.

122.    If the United States disagrees with the MDSP's determination to disqualify any Claimant, it shall notify the MDSP in writing within ten (10) days of its receipt of the MDSP's determination, and the Parties shall make a good faith effort to resolve the dispute.

### 2.    Incumbent Claimants Eligible for Priority Hiring Relief

123.    The MDSP may provide Priority Hiring Relief to incumbent MDSP Troopers who meet the eligibility criteria listed in Paragraph 70 by crediting such Troopers with Retroactive Seniority and a Proportional Hiring Bonus as described in Paragraphs 132-137, subject to the limitation described below in Paragraph 124.

124.    The MDSP may credit no more than five (5) eligible incumbent Troopers with Priority

Hiring Relief unless it first exhausts the list of eligible non-incumbent Claimants eligible

for priority hire.

125.    If MDSP intends to satisfy any part of its priority hiring obligations by crediting eligible

incumbent Troopers with Retroactive Seniority and a Proportional Hiring Bonus, it must

select from among such Troopers in order of greatest Proportional Hiring Bonus to

smallest.

126.    The MDSP will notify the United States in writing if it intends to satisfy any part of its

priority hiring obligations by crediting eligible incumbent Troopers with Retroactive

Seniority and a Proportional Hiring Bonus, within thirty (30) days of any such award of

Priority Hiring Relief, which notice will include the details of the Retroactive Seniority

and Hiring Bonus provided.

### 3.    Offer of Priority Hire

127.    The MDSP will provide selected eligible non-incumbent Claimants with a written offer

of priority hire upon a Claimant's successful completion of the MDSP's entry-level

Trooper screening and selection procedures that are then in effect and required of all

other entry-level Trooper applicants, provided that if the offer of priority hire would lead

to more than fifteen (15) Priority Hires being in the same MDSP Academy class, the

MDSP shall offer additional individuals entrance into the following Academy class.

128.    The MDSP will endeavor to make offers of priority hire as early as possible upon a

Claimant's successful completion of the MDSP's entry-level Trooper screening and

selection procedures, so that if a Claimant rejects an offer of priority hire or does not

timely respond to an offer of priority hire, the MDSP will have sufficient time prior to the

next MDSP Academy class to appoint fifteen (15) Priority Hires.  The MDSP will not make offers of priority hire within twenty-one (21) days of the starting date of the Academy class to which the individual is being invited, unless the Parties mutually agree in writing otherwise.

129.   The written offer of priority hire will be sent via first-class U.S. mail and email, and prominently indicate:

    a.   that the offer is an offer of priority hire being made pursuant to the Decree;

    b.   that, upon graduation from the MDSP Academy, the Claimant will be entitled to Retroactive Seniority and a hiring bonus in lieu of pension credits, as provided by this Decree;

    c.   the specific starting salary that the MDSP will provide upon graduation from the MDSP Academy and the retroactive seniority date that will be used to calculate the other Retroactive Seniority benefits;

    d.   the amount of the hiring bonus that the MDSP will provide upon Academy graduation;

    e.   the telephone number at which the Claimant may contact the MDSP's Consent Decree Compliance Officer with any questions regarding the offer of priority hire;

    f.   the date on which the Claimant will begin MDSP academy training if the offer is accepted;

    g.   that the Claimant has fourteen (14) days from the date on which the Claimant receives the written offer of priority hire to notify the MDSP that the Claimant accepts the offer; and

h.  that the MDSP will keep the Claimant's designation as a Priority Hire pursuant to this Decree confidential and will not disclose the Claimant's designation as a Priority Hire in any document filed with the Court without a Court order permitting disclosure.

130.  On the date that such an offer of priority hire is provided to a Claimant, the MDSP shall send a copy of the offer of priority hire to the United States.

131.  If a Claimant fails to report to the MDSP Academy on the start date identified in the MDSP's offer of priority hire, after accepting the MDSP's offer, then except for good cause as determined by the Parties, the MDSP's obligation to provide the offer to or make a priority hire of that Claimant ceases.  However, such instances shall not constitute priority hiring under Paragraph 114 and shall not decrease the number of priority hires that the MDSP must make under Paragraph 113.

### 4.    Retroactive Seniority to Claimants Hired

132.  On the date on which a Claimant who is hired as a Priority Hire graduates from the MDSP Academy, or for incumbent Claimants on the date on which they are credited with Priority Hiring Relief, the MDSP shall credit the Claimant with a retroactive seniority date for purposes of calculating the regular rate of pay (and any other types of pay calculated based on the regular rate), accrual rate for vacation leave, layoffs/reductions in work force, and recall from layoffs/reduction in work force.  Also, the Claimant's initial assignment of duty station will be selected by the MDSP from among the Claimant's top three preferences.

133. Claimants will not be granted retroactive seniority for purposes of scheduling leave. Retroactive Seniority will not be used to satisfy any applicable probationary periods or any time-in-grade minimums required to be eligible for promotion.

134. The retroactive seniority date credited to a Claimant will correspond to the first academy class for which the Claimant's application was considered and which the Claimant could have been hired for had he or she not been disqualified by the test which made the Claimant eligible for Individual Relief, as outlined below.

| Academy Class | Retroactive Seniority Date |
|---|---|
| 147 | 08/21/2017 |
| 148 | 09/17/2018 |
| 149 | 01/14/2019 |
| 150 | 07/15/2019 |
| 151 | 01/06/2020 |
| 152 | 01/11/2021 |
| 153 | 09/13/2021 |
| 154 | 01/17/2022 |
| 155 | 06/20/2022 |
| 156 | 01/09/2023 |
| 157 | 09/18/2023 |
| 158 | 04/29/2024 |

**5.    Hiring Bonus for Claimants Hired**

135. The MDSP shall pay to each Claimant who is hired or credited as a Priority Hire a hiring bonus in lieu of retroactive pension benefits, subject to the limitation described in this Paragraph.  The amount of the hiring bonus paid to each such Claimant will correspond to the first academy class for which the Claimant's application was considered and which the Claimant could have been hired for had he or she not been disqualified by the test which made the Claimant eligible for Individual Relief, as outlined below.  If any Priority Hires are eligible based on their disqualification from hire for MDSP Academy Class 159

43

or later, such Priority Hires will not be paid any hiring bonus in lieu of retroactive pension benefits.

| Academy Class | Hiring Bonus |
|---|---|
| 147 | $4,353.50 |
| 148 | $4,332.99 |
| 149 | $4,303.19 |
| 150 | $4,254.65 |
| 151 | $4,169.59 |
| 152 | $3,755.92 |
| 153 | $2,805.32 |
| 154 | $2,451.86 |
| 155 | $1,893.24 |
| 156 | $1,500.00 |
| 157 | $1,000.00 |
| 158 | $500.00 |

136.   Incumbent Claimants who are credited with Priority Hiring Relief will receive a Proportional Hiring Bonus corresponding to the first academy class for which the Claimant's application was considered and which the Claimant could have been hired for had he or she not been disqualified by the test which made the Claimant eligible for Individual Relief, in the amount listed above discounted by the proportion of time between their Retroactive Seniority Date and the Date of Entry of this Decree during which they were employed as a MDSP Trooper.

137.   The hiring bonuses described in Paragraphs 135 and 136 shall be paid on the date on which a Claimant who is hired as a Priority Hire graduates from the MDSP Academy, or for incumbent Claimants, on the date on which they are credited with Retroactive Seniority.

### 6.    MDSP's Reports to the United States on Claimants Hired

138.   No later than thirty (30) days after the beginning of any MDSP Academy class for which

offers of priority hire are made, the MDSP shall provide to the United States a written

report identifying:

   a.  the name of each Claimant who was offered a priority hire position;

   b.  whether each such Claimant accepted the offer of a priority hire position;

   c.  whether each such Claimant began the MDSP Academy; and

   d.  for any Claimant who did not begin the MDSP Academy, a statement of the

       reason(s) that any Claimant did not begin the MDSP Academy, along with all

       available documentation relating to such reason(s).

139.   No later than thirty (30) days after the completion of any MDSP Academy class for

which offers of priority hire have been made, the MDSP shall provide to the United

States a written report identifying those Claimants who successfully completed academy

training and those who did not successfully complete academy training.  For Claimants

who successfully complete academy training, the report shall include a statement of the

Retroactive Seniority and hiring bonus that were provided and the date on which it was

provided.  For Claimants who did not successfully complete academy training, the report

shall include a statement of the reason(s) that the Claimant did not complete academy

training, along with all available documentation relating to such reason(s).

### E.    Confidentiality of Individual Relief

140.   The Parties agree that they will keep confidential the PII of any individual who seeks or

receives relief under this Decree, including, but not limited to, the identity of individuals

designated as Priority Hires pursuant to this Decree.  The Parties will not file any

document with the Court that identifies the name or other PII of any individual seeking or receiving relief under this Decree absent a court order permitting disclosure. The parties agree and understand that the MDSP must comply with Maryland law regarding confidentiality and disclosure.

## IX. RECORD KEEPING AND COMPLIANCE MONITORING

141. While this Decree remains in effect, the MDSP shall maintain all of the following records:

   a. All applications for the entry-level Trooper position;

   b. All documents relating to the screening, evaluation, or selection of applicants for the position of entry-level Trooper, other than documents the MDSP is contractually obligated to return to a test developer after use thereof;

   c. All data and documents relating to the administration of any selection device adopted or utilized pursuant to this Decree;

   d. All documents relating to written or verbal complaints made by any person or organization regarding discrimination on the basis of race or sex arising from the MDSP's screening of applicants for entry-level Trooper positions, or retaliation prohibited by Paragraph 41 above;

   e. All documents relating to the evaluation, selection, designation, and/or employment of Priority Hires under this Decree; and

   f. All other documents relating to the MDSP's compliance with the requirements of this Decree, including but not limited to documents relating to the payment or award of Individual Relief to any Claimant under this Decree.

142.   Except as otherwise provided in this Decree, the MDSP will make available to the United States, no later than thirty (30) days after the United States so requests in writing, any reasonably accessible, non-privileged records maintained in accordance with Paragraph 141, and any additional non-privileged documents relating to any dispute arising under the Decree.

143.   When possible and not unduly burdensome to MDSP, all records furnished to the United States shall be provided in a computer-readable format to be agreed upon by the Parties prior to production.

144.   Within thirty (30) days after the United States so requests in writing, the MDSP shall make available, in Pikesville, Maryland, or a location to which the Parties agree, for interview or deposition (at the United States' option) any agent, employee, or official of the MDSP who the United States reasonably believes has knowledge or information necessary to verify the MDSP's compliance with the terms of this Decree or to resolve a dispute arising under this Decree.

## X.   DISPUTE RESOLUTION

145.   The Parties shall attempt in good faith to resolve informally any disputes that arise under this Decree.  If the Parties are unable to resolve the dispute expeditiously, either party may submit the disputed issue to the Court for resolution upon seven (7) days written notice to the other party, unless a different time period has been specified elsewhere in the Decree.

XI.    **DURATION OF THE CONSENT DECREE**

146.    Provided that there are no outstanding disputes being resolved pursuant to Paragraph 145, this Decree shall be dissolved without further order of the Court three (3) years after the Date of Entry described in Paragraph 34, or, if later, upon completion of the following:

    a.    The process for adopting lawful New Selection Devices in place of the Challenged Written Test and Challenged Physical Fitness Test to hire entry-level Troopers, culminating in MDSP's final report due to the United States pursuant to Paragraph 54;

    b.    The process for issuance of monetary award checks set forth in Paragraphs 102-112 of this Decree; and

    c.    The passage of thirty (30) days after the MDSP provides the last of the reports regarding Priority Hiring Relief that are required by Paragraphs 126 and 138-139.

XII.    **COSTS AND FEES**

147.    Each party shall bear its own costs and other expenses incurred as a result of obligations imposed by this Decree, except as provided in Paragraphs 15-16.

148.    Each party shall bear its own costs, attorneys' fees, and other expenses incurred in this litigation.

XIII.    **MISCELLANEOUS**

149.    The Court shall retain jurisdiction over this Decree for the purpose of resolving any disputes or entering any orders that may be appropriate to implement the Decree until the obligations set forth in Paragraph 146 have been met.

150.    If there is any conflict between this Decree and the requirements of any state or local law or regulation, Federal law and the terms of this Decree shall control.

151.    This Decree constitutes the entire agreement of the Parties, and supersedes all prior

agreements, representations, negotiations, and undertakings not set forth or incorporated

herein.

152.    Unless the parties have agreed in writing otherwise, all written information and

documents required to be delivered under this Decree to the United States by the MDSP

shall be sent via electronic mail to the attorneys of record for this case.  To the extent

documents are too large to transmit via electronic mail, the MDSP should consult with

the United States at least seven (7) business days prior to the relevant deadline to discuss

an alternate form of delivery.

153.    If any provision of this Decree is found to be unlawful, only the specific provision in

question shall be affected, and the other provisions will remain in full force and effect.

154.    Final entry of this Decree constitutes the entry of final judgment within the meaning of

Rule 54 of the Federal Rules of Civil Procedure as to all claims asserted in this action.

It is so ORDERED, this  _8_  day of  _NOVEMBER_ ___, 202 _4_.

_____

JUDGE  _Rll D. Butt_
UNITED STATES DISTRICT JUDGE

**CONSENTED TO BY:**

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

EREK L. BARRON
United States Attorney
District of Maryland

KAREN D. WOODARD
Chief
Employment Litigation Section

SARAH A. MARQUARDT
Co-Chief, Civil Rights & Special Victims Section
District of Maryland

HECTOR F. RUIZ, JR.
Deputy Chief
Employment Litigation Section

*/s/ Emily Given*
EMILY GIVEN
NY Bar No. 5420211
CHEYENNE N. CHAMBERS
NC Bar No. 48699
Senior Trial Attorneys
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 532-5696
(202) 532-3850
Emily.Given@usdoj.gov
Cheyenne.Chambers@usdoj.gov

*/s/ Kimberly S. Phillips*
KIMBERLY S. PHILLIPS
MD Bar No. 811611
Assistant United States Attorney
District of Maryland
6500 Cherrywood Lane, Suite 200
Greenbelt, MD 20770
(410) 209-4800
Kimberly.Phillips@usdoj.gov

**FOR DEFENDANT MARYLAND DEPARTMENT OF STATE POLICE:**

*/s/ Col. Roland L. Butler, Jr.*
Col. Roland L. Butler, Jr.
Superintendent, MDSP
1201 Reisterstown Road
Pikesville, Maryland
(410) 653-4200

Legal Counsel:


ANTHONY G. BROWN
Attorney General

*/s/ Phillip M. Pickus*
PHILLIP M. PICKUS
(Bar No. 22814)
AMY E. HOTT
(Bar No. 27823)
Assistant Attorneys General
Maryland Department of State Police
1201 Reisterstown Road
Pikesville, Maryland 21208
410-653-4437 (tel)
410-653-4270 (fax)
Philip.pickus@maryland.gov
Amy.hott@maryland.gov